UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JEFFREY SCOTT MOORE,               )
                                   )
                    Petitioner,    )
                                   )
v.                                 )          No. 4:14 CV 872 SNLJ (JMB)
                                   )
IAN WALLACE,                       )
                                   )
                    Respondent.    )

**REPORT AND RECOMMENDATION**

Jeffrey Moore ("Moore") has petitioned the Court for a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  (ECF No. 1)  The Honorable Stephen N. Limbaugh, Jr., United States District

Judge, referred this matter to the undersigned United States Magistrate Judge for a Report and

Recommendation on dispositive matters, and for rulings on non-dispositive matters.  (ECF No.

5)  See 28 U.S.C. § 636(b).  The undersigned concludes that this matter may be resolved on the

existing record, without an evidentiary hearing.  The undersigned recommends that Moore's

petition be denied and that no certificate of appealability issue.

**I.      Procedural and Factual Background**

**A.  Introduction**

Moore is currently incarcerated at the Southeast Correctional Center in Charleston,

Missouri, having been convicted after a jury trial in the Circuit Court of St. Charles County,

Missouri, of kidnapping, domestic assault, felonious restraint, forcible rape, and forcible

sodomy.  Moore is serving consecutive life sentences as a result of these convictions.

**B.  Factual Background**

The evidence in the state court record demonstrates that, on the evening of March 23,

2008, Moore lured his wife, K.M. (from whom he was estranged due to recent episodes of

domestic violence) to his place of employment in St. Charles under the ruse of making restitution payments. K.M. reluctantly agreed.

Upon K.M.'s arrival, Moore forced himself into K.M.'s car, told her it was "her night to die," and then choked K.M. as she tried to escape. (Resp. Ex. A at 341-43) After additional escape attempts by K.M., and additional threats by Moore that he would kill her if she "tried anything stupid," Moore forced K.M. to take off her clothes and lie down while he drove to the City of St. Louis. (Id. at 344-52) Then, Moore pulled his car into an alley on the north side of St. Louis City and raped K.M.

During this time, K.M. was repeatedly trying to get Moore to check himself into a hospital because she thought he was mentally ill. Moore eventually agreed to K.M.'s request, but not before the two drove back to St. Charles to get Moore's car. Moore and K.M. then made plans to drive Moore to the hospital, driving separate cars. K.M. eventually escaped from Moore, and drove to a police station. At the station, Officer Eric Henry took her initial statement. The police then took K.M. to Barnes Jewish Hospital, where a rape kit examination was performed. The next day, Detective Wooderson and another officer from the City of St. Louis came to St. Charles to interview K.M. Officers photographed the extent of K.M.'s injuries, including to her face, neck, and lower body.

On March 25, 2008, Moore was arrested by St. Charles police at the home of one of Moore's girlfriends. Police arrived at the residence, and Moore's girlfriend answered the door. When police asked whether Moore was present, Moore's girlfriend moved aside, and pointed to the interior of the residence. As police searched the house, they found Moore in a back room, trying to escape through a window.

Moore made several statements to the police, both in St. Peters and the City of St. Louis, in which he acknowledged having sexual intercourse with K.M., but claimed that the sexual activity was consensual.[1]

## C. Procedural History

Moore was originally charged in the Circuit Court of St. Charles County with kidnapping, domestic assault, felonious restraint, forcible rape, forcible sodomy, and attempted victim tampering. (Resp. Ex. B at 12-15) The State omitted the charge of attempted victim tampering when it filed a substitute information in lieu of indictment. (Id. at 31-35)

Moore's trial took place from April 13, 2010 through April 15, 2010. (Resp. Ex. A) On April 15, 2010, Moore was found guilty of all five counts. (Resp. Ex. B at 10; Resp. Ex. A at 711-12) On June 4, 2010, Moore was sentenced to life imprisonment on the kidnapping charge, fifteen years for domestic assault and felonious restraint, life imprisonment for forcible rape, and life imprisonment for forcible sodomy.[2] (Resp. Ex. B at 50-53) Moore was sentenced as a prior and persistent offender. (Resp. Ex. A at 718)

Moore appealed his conviction to the Missouri Court of Appeals, raising the following points: (1) the trial court erred in allowing the prosecution to refer to Detective Wooderson as a member of the "Domestic Abuse Unit" of the St. Louis Police Department, because referring to Detective Wooderson in that way was unduly prejudicial to Moore, and without probative value; (2) the trial court erred in denying Moore's motion to strike a juror for cause after the prospective juror displayed bias concerning allegations of rape during voir dire, forcing Moore to

---

[1] Additional factual background is discussed below, as necessary.

[2] The sentences in counts one and two are to run consecutive to each other. The sentence in count three will run concurrent to the sentences in counts one and two. The sentences in count four and five run concurrently with each other but they run consecutive to the sentences in counts one, two, and three. (Resp. Ex. 50-51)

use a peremptory challenge to exclude the juror; (3) the trial court erred by declaring prior inconsistent statements by the victim concerning how the sexual intercourse occurred "inadmissible hearsay;" (4) the trial court erred in allowing non-expert witness Officer O'Neal to testify as to his conclusions that wounds to the victim were "fresh," which invaded the fact-finding province of the jury; and (5) the trial court erred by refusing to instruct the jury on the defense of consent for the rape and forcible sodomy charges, which was supported by evidence that Moore offered at trial and which Moore was entitled to introduce to the jury.  (Resp. Ex. C at 8-9)

The Missouri Court of Appeals denied all of Moore's claims.  It noted that Moore had not preserved claims one, four, and five.  (Resp. Ex. E at 8, 19, 22)  The court nevertheless reviewed those claims for plain error and found none.  The court rejected claims two and three on the merits.  (Resp. Ex. E at 11-17)  With regard to claim number one, the court reviewed only for plain error because Moore had failed to object at trial to the identification of Detective Wooderson as a member of the domestic abuse unit.  (Resp. Ex. E at 8)  Furthermore, the court held that the use of Detective Wooderson's unit name was merely for purpose of giving background information on where the officer worked; it was not an intentional plan to subliminally convey to the jury that Moore was a domestic abuser.  (Id. at 9-11)

With regard to the juror allegation, the court of appeals denied Moore's point.  Noting that trial judges are given wide deference in conducting voir dire and evaluating juror qualifications, the court of appeals held that the trial court did not abuse its discretion because the juror at issue expressly stated that he could be fair and impartial and decide the case based upon the evidence.  (Id. at 13-15)

The court also rejected Moore's third point—that the trial court erred in ruling that statements contained in a police report made by the victim concerning how the sexual incidents happened were inadmissible hearsay. The court concluded that it was within the trial court's discretion to exclude the statements because the testifying officer (Detective Wooderson) had no first-hand knowledge of the facts asserted in a police report created by a different officer, Officer Henry. (Resp. Ex. E at 17)

As to the fourth point, the court rejected Moore's contention that Officer O'Neal should not have been permitted to testify that the victim's wounds were "fresh" when she was photographed after the March 23, 2008 incident. Moore claimed that the wounds were from an incident three weeks prior, and that Officer O'Neal was testifying to an opinion, taking from the jury the right to decide whether the wounds were fresh. The court of appeals held that, where Officer O'Neal had personal knowledge of the wounds, and had personally seen them, and where it was impossible to recreate the scenario and facts of the wounds as they existed on March 23, it was permissible for Officer O'Neal to give his opinion. (Resp. Ex. E at 19-20)

Finally, the court of appeals also denied Moore's fifth point, which was that the trial court erred in refusing to instruct the jury on the "defense" of consent. (Resp. Ex. E at 21) The court first noted that this point was not preserved for appeal because Moore did not include the proposed text of the instruction "anywhere in his brief or include the instructions in the legal file" on appeal. (Id. at 22) Moore's failure to do so violated Missouri Supreme Court rules 84.04(e) and 30.04(a). (Id. at 21) The court, therefore, reviewed this point for plain error only.

Under the plain error standard, the court of appeals held that the trial court did not err in refusing to give Moore's proposed jury instructions, as the trial court used the Missouri Approved Instructions applicable to forcible rape and forcible sodomy. Under Missouri law,

wherever there is an applicable Missouri Approved Instruction, the trial court must give that instruction to the exclusion of all other instructions. (Id. at 23) Furthermore, the court held, the instructions discussed the issue of forcible compulsion, and where the jury necessarily found forcible compulsion as an element of the crime, there was no need for the jury to find a lack of consent. (Id. at 23-24) Therefore, the point was denied.

After losing his direct appeal, Moore filed a *pro se* motion for post-conviction relief, under Missouri Supreme Court Rule 29.15. (Resp. Ex. G at 5-22) The 29.15 court appointed post-conviction relief ("PCR") counsel for Moore. PCR counsel filed an amended motion on November 29, 2011. (ECF No. 23, 28-52)

In the amended motion, Moore raised nine grounds for relief. These grounds were: (1) ineffective assistance of trial counsel for failing to subpoena and produce as a witness Officer Henry, to whom the victim had described the rape and sodomy differently than she described it at trial, and therefore, Moore was unable to effectively impeach the victim with those discrepancies; (2) ineffective assistance of trial counsel for failing to oppose the introduction of a prior domestic assault allegedly committed by Moore three weeks before the alleged crime; (3) ineffective assistance of trial counsel for failing to impeach Officer Shipley's claims that Moore was trying to flee from arrest when police took him into custody; (4) ineffective assistance of trial counsel for failing to challenge the legality of Moore's arrest, and then move to suppress resulting statements and physical evidence on the basis that the arrest was illegal; (5) ineffective assistance of trial counsel for failing to object to the absence of any African-Americans on the venire panel; (6) ineffective assistance of trial counsel for failing to move for a speedy trial, despite Moore's request for a speedy trial; (7) ineffective assistance of trial counsel for failing to insist on a hearing, outside the presence of the jury, on the admissibility of evidence of

consensual sexual activity otherwise deemed inadmissible under the Missouri Rape Shield statute; (8) ineffective assistance of trial counsel for failing to retain an expert on forensic pathology to testify that sperm collected for the rape kit was deposited more than 48 hours prior to the crime; and (9) ineffective assistance of trial counsel for failing to object to a discovery violation by the state for failure to produce incriminating evidence known by Officer Shipley but not included in his police report.  (Resp. Ex. G at 31-49)

On December 19, 2011, the 29.15 court granted Moore's request for an evidentiary hearing on the first four claims of Moore's amended motion.  (Resp. Ex. G at 56)  The evidentiary hearing was held on January 17, 2012.  (Id. at 57)  At the hearing, the 29.15 court received testimony from Tracy Ann Brown, Moore's trial attorney.  During this testimony, Moore's PCR counsel questioned the trial attorney concerning:  (1) her failure to call Officer Henry at trial; (2) her failure to object to the introduction of the domestic assault evidence from three weeks before the kidnapping; (3) her failure to cross-examine Officer Shipley concerning the circumstances of Moore's arrest; and (4) her failure to file a motion to suppress statements made by Moore after he was arrested, on the grounds that he was arrested illegally.  (Resp. Ex. F at 4-23)  In response to this questioning, trial counsel represented that her decisions on these matters were strategic decisions, because these alleged "failures" were inconsistent with her trial strategy of asserting that the sexual activity was consensual.  (Id. at 23-28)  On February 24, 2012, the 29.15 court issued its judgment denying Moore's request for relief, and issued findings of fact and conclusions of law supporting that judgment.  (Resp. Ex. G at 58-67)  The 29.15 court overruled all nine of Moore's proposed grounds for relief.  (Id.)

On April 4, 2012, Moore filed a notice of appeal from the judgment of the 29.15 court. (Resp. Ex. G at 70)  Moore presented three points on appeal.  (Resp. Ex. H at 13-15)  First, he

argued that he received ineffective assistance of trial counsel because she failed to call Officer Henry to impeach the victim's account of the rape. Second, he argued that his trial counsel was ineffective for failing to object to evidence that Moore had violently assaulted the victim three weeks before the charged crimes. Finally, he argued that trial counsel was ineffective for failing to challenge Officer Shipley's previously unrecorded claim that Moore was trying to flee and that Moore challenged Shipley with a profanity. (Resp. Ex. H at 13-15) The court of appeals affirmed the 29.15 court's judgment. (Resp. Ex. J at 2)

After exhausting all of his state court avenues of relief, Moore filed this federal habeas petition on May 6, 2014. (ECF No. 1) The State of Missouri ("Respondent") filed a motion requesting a more definite statement. (ECF No. 7) Moore, in turn, requested leave to file an amended petition. (ECF No. 8) This Court granted Moore's request for leave, denied Respondent's motion as moot, and ordered Respondent to Show Cause why a writ of habeas corpus should not be granted. (ECF No. 9) The amended petition was entered, Respondent filed a response, and Moore filed a traverse. (ECF No. 10, 11 and 21) The case is fully briefed and may be resolved on the existing record without an evidentiary hearing.[3]

## II.  Grounds Alleged

Moore has alleged sixteen grounds for relief.[4]

---

[3] "A district court does not err in dismissing a movant's motion without a hearing if (1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (quotations omitted); see also Johnson v. Luebbers, 288 F.3d 1048, 1060 (8th Cir. 2002) (upholding a district court's denial of an evidentiary hearing where the existing record was sufficient for the court to decide the petitioner's claims).

[4] Moore's initial Petition and his Amended Petition are not organized in quite the same way. The grounds listed here are those asserted in his Amended Petition. Because the Amended Petition was filed after the one-year limitations period imposed by the Antiterrorism and

1. Trial court erred in denying Moore's motion to prohibit the State from describing Detective Wooderson as working for the "domestic abuse unit" of the St. Louis City Police Department because it was unfairly prejudicial and the prejudice outweighed any probative value, violating Moore's Sixth Amendment rights.[5]

2. Trial court erred in denying Moore's motion to strike juror number 64 for cause after the prospective juror displayed obvious prejudice concerning allegations of rape during voir dire, forcing Moore to use a peremptory strike to exclude juror number 64, violating his right to a fair trial under Sixth Amendment.

3. Trial court erred by excluding prior inconsistent statements of the alleged victim concerning how the sexual intercourse occurred as "inadmissible hearsay."

4. Trial court erred in allowing non-expert witness Officer O'Neal to testify that wounds to the victim were "fresh," invading the fact-finding province of the jury.

5. Trial court erred in refusing to instruct the jury on the defense of "consent" for the forcible rape and forcible sodomy counts, which was supported by evidence Moore offered at trial, and which he was entitled to introduce to the jury.

6. Ineffective assistance of trial counsel for failure to subpoena and produce as a witness Officer Eric Henry, for purposes of asking about inconsistencies between the victim's statements to the officer and her testimony at trial.

7. Ineffective assistance of trial counsel for failure of trial counsel to object to evidence of a prior domestic assault committed by Moore upon the victim.

8. Ineffective assistance of trial counsel for failure to impeach Officer Shipley on his claim that Moore was trying to flee from arrest when Officer Shipley claimed in his report that Moore was arrested without incident.

---

Effective Death Penalty Act of 1996 ("AEDPA"), only those grounds which relate back to grounds asserted in the original Petition are considered timely. Grounds that do not relate back to the original pleading are barred from consideration.

[5]      The Court assumes that Moore means his due process right to a fundamentally fair trial under the Fourteenth Amendment. Additionally, in all of his grounds, Moore discusses violations of Missouri statutory and constitutional provisions. Such allegations are not cognizable in a federal habeas court. See 28 U.S.C. § 2254(a).

9.  Ineffective assistance of trial counsel for failure to challenge the legality of Moore's arrest, and moving to suppress the resulting statements and physical evidence.

10. Ineffective assistance of trial counsel for failure to object to the absence of any African – Americans on the venire panel.

11. Ineffective assistance of trial counsel for failure to move for a speedy trial, despite Moore's request for a speedy trial.

12. Ineffective assistance of trial counsel for failure to insist on a hearing, outside the presence of the jury, on the admissibility of evidence of consensual sexual activity otherwise deemed inadmissible by the Rape Shield Statute (§ 491.075 R.S.Mo.).

13. Ineffective assistance of trial counsel for failure to retain an expert on forensic pathology to testify and prove that sperm collected in the rape kit was deposited more than 48 hours prior to the alleged rape and sodomy.

14. Ineffective assistance of trial counsel for failure to object to a discovery violation by the State for failure to produce incriminating evidence known by Officer Shipley, but not contained in his police report.

15. Ineffective assistance of appellate counsel for failure to raise on appeal that the trial court erred in refusing to allow trial counsel to fully cross-examine Detective Wooderson concerning inconsistencies between the victim's statements to Officer Henry (found in Henry's police report) and the victim's testimony at trial concerning details of the rape.

16. Ineffective assistance of post-conviction counsel for failing to raise, in the 29.15 court: (i) trial counsel was ineffective for failing to file a motion to suppress physical evidence; (ii) trial counsel was ineffective for failing to challenge the fact that Moore's arrest was made without a warrant; (iii) trial counsel was ineffective for failing to interview and call Moore's witnesses, who were willing to testify at trial; (iv) trial counsel was ineffective for failing to inform Moore of all possible defenses that could be presented, including an Alford plea and/or insanity defense; (v) trial counsel was ineffective for failing to subpoena all laboratory reports from St. Louis City police; (vi) trial counsel was ineffective for failing to file a motion proposing evidence under § 491.015; (vii) trial counsel was ineffective for failing to object to the prosecution's "surprised evidence;" (viii) trial counsel was ineffective for failing to object to the prosecutor eliciting irrelevant evidence; (ix) trial counsel was ineffective for failing to object to the State's motion in limine preventing Moore from referencing the victim's prior sexual history; (x) trial counsel was ineffective for failing to correctly or truthfully inform Moore on matters regarding whether he could ask the State for assistance

with a defense expert witness; and (xi) trial counsel was ineffective for failing to seek to have Counts 4 and 5 of the indictment dismissed on the grounds that the trial court did not have jurisdiction over these counts occurring in the City of St. Louis, or in the alternative, failing to transfer Counts 4 and 5 to St. Louis City, which is the proper venue to try these counts.

## III. Standard of Review and Legal Framework

### A. Antiterrorism and Effective Death Penalty Act of 1996

Review of Moore's claims is governed by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA mandates a review of Moore's claims that is both "limited and deferential" to the state court's decisions. Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under AEDPA, a federal court may not issue a writ of habeas corpus to a state prisoner unless the state court's adjudication of a constitutional claim "was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court." Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010) (citing 28 U.S.C. § 2254(d)). Thus, a state court decision "may be incorrect, yet still not unreasonable…." Id. A federal court may grant habeas relief "only if the state court decision is both incorrect and unreasonable." Id.

"A state court decision is 'contrary to' the Supreme Court's clearly established precedent if the state court either 'arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law' or 'decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts.'" Bucklew v. Leubbers, 436 F.3d 1010, 1016 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)). A state court decision is "an 'unreasonable application' of Supreme Court precedent if it 'identifies the correct governing legal principle … but unreasonably applies that principle to the facts of the prisoner's case.'" Id. "Further, 'a determination of a factual issue made by a State court [is] presumed to be correct' in a federal habeas proceeding." Cole, 623 F.3d at 1187 (quoting 28 U.S.C. § 2254(e)(1)).

Several of Moore's grounds raise ineffective assistance of counsel claims. In order to prevail on an ineffective assistance of counsel claim, Moore must demonstrate both that counsel's performance was so deficient as to not function as the "counsel" guaranteed the defendant by the Sixth Amendment, and that he was prejudiced thereby. See Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). Moore must prevail on both prongs of the Strickland standard in order to obtain relief. See Worthington v. Roper, 631F.3d 487, 498 (8th Cir. 2011) ("Failure to establish either Strickland prong is fatal to an ineffective-assistance claim.").

"Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." Bucklew, 436 F.3d at 1016 (citing Strickland, 466 U.S. at 689). Thus, "[u]nder Strickland, counsel's performance is 'measured against an objective standard of reasonableness,' and 'hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made, and by giving a heavy measure of deference to counsel's judgments.'" Id. (quoting Rompilla v. Beard, 545 U.S. 374, 380-81 (2005)).

Under Strickland, "[p]rejudice is shown by demonstrating that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." Id. (citing Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)). Thus, in order to prevail on the prejudice prong, Moore must show "that but for counsel's deficiency there is 'a reasonable probability that … the result of the proceeding would have been different.'" Lamar v. Graves, 326 F.3d 983, 985 (8th Cir. 2003) (quoting Strickland, 466 U.S. at 694).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review," Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563

U.S. 170, 202 (2011)). "Under AEDPA, we must then give substantial deference to the state court's predictive judgment [regarding <u>Strickland</u> prejudice]. So long as the state court's decision was not 'contrary to' clearly established law, the remaining question under the 'unreasonable application' clause of § 2254(d) is whether the state court's determination under the <u>Strickland</u> standard is unreasonable, not merely whether it is correct." <u>Id.</u> (citing <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011)). "This standard was meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" <u>Id.</u> (quoting <u>Harrington</u>, 562 U.S. at 102). "If the state court 'reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions,' then federal review under AEDPA is at an end." <u>Id.</u> at 832 (quoting <u>Preno v. Moore</u>, 562 U.S. 115, 131 (2011)).

### B.  **Procedural Default**

Many of Moore's grounds are procedurally barred. "Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." <u>Martinez v. Ryan</u>, 566 U.S. 1, 9 (2012). Under the doctrine of procedural default, a federal habeas court may not review claims where "the prisoner had failed to meet a state procedural requirement." <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991); <u>see also</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

Subject to a few narrow exceptions, the procedural default doctrine prohibits federal courts from considering defaulted claims. For example, "a prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." <u>Martinez</u>, 566 U.S. at 10 (citing <u>Coleman</u>, 501 U.S. at 750). Cause is shown if the petitioner demonstrates that an objective factor, external to his defense, impeded his ability to

comply with the procedural requirement.  Coleman, 501 U.S. at 750.  Prejudice in this context requires the petitioner to show that the alleged errors "worked to his actual and substantial disadvantage."  Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (emphasis in original); see also Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012).  Here, the standard of prejudice "is higher than that required to establish ineffective assistance of counsel under Strickland." Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995).

A procedural default may also be excused if a petitioner can show that a fundamental miscarriage of justice would otherwise occur.  For example, if a petitioner can demonstrate that he is actually innocent, a federal court may excuse his procedural default.  Schlup v. Delo, 513 U.S. 298, 324 (1995).  Actual innocence is established by presenting new and reliable evidence.

Per Martinez, alleged attorney errors in initial-review collateral proceedings may sometimes qualify as cause for procedurally defaulted ineffective assistance of trial counsel claims. 566 U.S. at 14.  In order for ineffective assistance of PCR counsel to excuse a procedural default, the petitioner must demonstrate that the underlying ineffective assistance of counsel claim is "substantial," meaning that it has "some merit."  Id.

In the Eighth Circuit, "[a] federal court is allowed to find 'cause,' thereby excusing a habeas petitioner's procedural default … where (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'"  Dansby v. Hobbs, 766 F.3d 809, 834 (8th Cir. 2014) (citing Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013)).  If Moore can demonstrate all three of these requirements, then he has demonstrated cause excusing the procedural default of his ineffective assistance of

trial counsel claims. As explained below, Moore has not met this standard for any of his procedurally defaulted grounds.

Finally, until recently, there was uncertainty whether a state court's plain error review of a defaulted claim cured or otherwise remedied a procedural default for federal habeas purposes. In Clark v. Bertsch, 780 F.3d 873, 876-77 (8th Cir. 2015), the Eighth Circuit held that a state court's plain error review of an unpreserved or waived claim does not cure a procedural default.[6]

## IV.  Analysis of Grounds Raised

### A.  Grounds Alleging Trial Court Error

#### 1)  Ground 1

In Ground 1, Moore alleges that the trial court erred in denying his request to prohibit the State from describing Detective Wooderson—who interviewed Moore in the aftermath of his arrest in St. Charles, because the rape had taken place within the City of St. Louis—as working for the "Domestic Abuse Unit" of the St. Louis City Police Department. (ECF No. 10 at 11). Moore argued that it was prejudicial to him to refer to Detective Wooderson's specific assignment, because it would imply that Moore was guilty of domestic abuse, and thereby prejudice the jury against him. (Id.)

---

[6] In its response to this Court's order to Show Cause, Respondent briefly raises the point that Moore's initial habeas petition was filed only two weeks before the statutory deadline set by AEDPA, (see 28 U.S.C. § 2244(d)(1)), and that Moore's amended petition was filed two months after that deadline. (See ECF No. 11 at 3, n. 3) Therefore, any claim in the amended petition that does not relate back to the original petition is untimely. See Mayle v. Felix, 545 U.S. 644, 664 (2005) (noting that a claim "relates back" to a claim in the original petition if it shares the same core of operative facts). It is clear from the Court's review of Moore's petition, his amended petition, and his state court filings that—giving Moore's claims the broadest possible review—Moore has presented similar claims for relief all along, and that the claims in the amended petition share the same core of operative facts as the claims from the initial petition. The Court concludes that Moore's claims are not untimely.

The trial court denied Moore's motion, finding that there was no prejudice to Moore in saying that Detective Wooderson worked in the Domestic Abuse Response Team.  (Id. at 103)  Thereafter, Detective Wooderson testified at Moore's trial (without objection) that she worked as part of the Domestic Abuse Unit, "investigat[ing] crimes involving romantically-involved relationships."  (Resp. Ex. A at 562)

On direct appeal, the Missouri Court of Appeals noted that this claim was not properly preserved because Moore had failed to object at trial to Detective Wooderson testifying regarding her unit assignment.  (Resp. Ex. E at 8)  Therefore, the court reviewed Moore's claim solely for plain error.

This claim is procedurally defaulted, because Moore did not properly present this claim to the Missouri courts in accordance with the state procedural rules.  See Clark 780 F.3d at 877 (holding that a state court's plain-error review of unpreserved claims cannot excuse procedural default).  Therefore, Moore must demonstrate cause and prejudice for failure to properly present this claim to the Missouri courts.  Coleman, 501 U.S. at 750.

Moore makes several arguments in an attempt to meet his burden.  (ECF No. 21 at 1-6)  At the beginning of his traverse, Moore dedicates a section of argument to refuting the State's contention that Moore has procedurally defaulted a majority of his claims.  Moore's procedural default arguments are generalized, and do not pertain to any particular procedurally-defaulted claim.  (Id.)  Moore argues generally that "counsel's ineffectiveness in even failing to properly preserve a claim for review, or raise a claim in state court will suffice as cause to excuse a procedural default."  (Id. at 2)  Moore's generic and conclusory arguments are not sufficiently

specific to constitute cause in this case.[7] See Williamson v. Jones, 936 F.2d 1000, 1006 (8th Cir. 1991) (holding that a petitioner must do more than simply allege that counsel's failure to present claims was due to ineffectiveness).

This is particularly appropriate when Moore claims that the "cause" of his procedural default was ineffective assistance of counsel. The undersigned notes that ineffective assistance of counsel can, in some instances, constitute cause for excusing a procedural default, but at the very least it must be ineffectiveness that rises to the level of a Sixth Amendment violation. See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). Even then, there must be an accompanying ineffective assistance of counsel claim for failure to raise the procedurally defaulted claim. See Id. at 452 ("[A] claim of ineffective assistance, we said, generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (citing Murray v. Carrier, 477 U.S. 478, 489 (1986) (internal citations omitted). Here, there was no accompanying ineffective assistance of counsel claim for failure to present the procedurally defaulted claim. In addition, under Strickland, there must be an assessment of counsel's performance and prejudice in order to determine whether a Sixth Amendment violation has occurred. Where there are no specifics, and Moore makes only generic averments that ineffective assistance of counsel is the cause of his procedural default, this Court cannot engage in the analysis of counsel's deficiency or any resulting prejudice in order to establish the Sixth

_____

[7] The undersigned notes that Moore spends multiple pages of his traverse arguing that plain error review by the Missouri courts permits this Court to excuse Moore's procedural default. (ECF No. 21 at 4-6) Moore's traverse cites to old case law in support of that point. See Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996) (holding state's plain-error review does not cure procedural default, and federal court may review only if cause and prejudice demonstrated); and Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000) (holding state's plain-error review of procedurally –barred claims allows later consideration in federal court). As noted above, Clark v. Bertsch, resolved this intra-circuit split, and held that a state court's plain error review of a procedurally defaulted claim does not lift a procedural bar.

Amendment violation that is necessary for ineffectiveness to count as cause under Edwards v. Carpenter.

Even if this ground were not procedurally defaulted, it involves a non-cognizable issue of state evidentiary law. See 28 U.S.C. § 2254(a) (noting that federal habeas relief is available to state prisoners only to correct violations of (1) the United States Constitution; (2) federal laws; or (3) treaties of the United States). Apart from exceptions such as the Confrontation Clause, state evidentiary issues only assume constitutional significance where the introduction or exclusion of evidence is so extremely unfair that its admission violates fundamental conceptions of justice. See Dowling v. United States, 493 U.S. 342 (1990). The Supreme Court has defined this class of evidentiary issues "very narrowly." Id. The Eighth Circuit has further opined that, to constitute a due process violation, an evidentiary mistake must be "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995).

The trial court's admission of Detective Wooderson's actual title does not rise to that level of egregiousness, and it did not fatally infect the proceedings or render the entire trial fundamentally unfair. As the state courts held in disposing of this issue, "the name of the police officer's unit was not stated intentionally to indicate anything related to the charge against [Moore] or to imply that he committed any bad acts, but was clearly given as background information to explain where Det. Wooderson worked." (Resp. Ex. E at 10) The explanation given by the Missouri Court of Appeals is entitled to deference and does not incorrectly or unreasonably apply federal constitutional law.

Therefore, Moore is not entitled to relief on this ground because (1) it is procedurally defaulted; (2) it concerns a non-cognizable issue of state evidentiary law; and (3) to the extent

that it even implicates the Due Process Clause, the state courts adjudicated it in a manner consistent with 28 U.S.C. § 2254(d).

### 2) <u>Ground 2</u>

In Moore's second ground, he claims that the trial court erred in denying his motion to strike a potential juror for cause. (ECF No. 10 at 11) Moore argues the potential juror displayed obvious prejudice during voir dire. Moore instead used a peremptory strike to exclude the juror, and argues that this violated his right to a fair trial.

This ground arises out of a line of questioning during voir dire, in which the prosecutor asked members of the venire panel whether—given the nature of the crime alleged—any of them could not be fair or impartial. (Resp. Ex. A at 154-55) Juror number 64 responded that he had an ex-girlfriend who had been sexually abused by her stepfather. When asked whether he could be fair, and not punish Moore for the crimes of the ex-girlfriend's stepfather, the juror responded equivocally at first. (<u>Id.</u>) The prosecutor then directly asked the juror whether he "could be fair and impartial and decide this case based upon the evidence." The juror responded affirmatively. Later, Moore attempted to have this potential juror stricken for cause, but the trial court denied that motion. In so ruling, the court noted that the juror was much more "matter of fact" about his ability to be fair and impartial compared with another panel member that the judge did strike for cause, and that Juror 64 did not say anything to otherwise disqualify himself. (Resp. Ex. A at 287).

Moore argues that the juror should have been excused for cause. (ECF No. 21 at 7-11) Moore argues that the prospective juror "displayed obvious prejudice" concerning allegations of rape. (<u>Id.</u> at 7) Respondent, in turn, argues that the prospective juror affirmatively and clearly represented to the court that he could be fair and follow the trial court's directions. But Moore

makes much of the fact that the prosecutor asked whether the prospective juror "thought" he "could" be fair.  (Id. at 8)  Although the prospective juror answered affirmatively, Moore argues that the court should have elicited a more concrete and unequivocal answer from the prospective juror.  Although Moore was able to keep this individual off the jury by using his peremptory strikes, Moore argues that it violated his constitutional rights to require him to use a peremptory right where he thinks the juror should have been dismissed for cause.

This ground is properly before the Court because Moore fully exhausted all of his state court remedies as required by 28 U.S.C. § 2254(b)(1).  Moore is not entitled to relief on his second ground.  The Missouri Court of Appeals concluded that the trial court did not abuse its discretion in denying Moore's motion to strike juror number 64.  (See Resp. Ex. E at 13-15) This was consistent with federal constitutional law.

In Patton v. Yount, 467 U.S. 1025 (1984), the Supreme Court explained that the legal standard is whether a venire panel member could set aside any opinion that they might have concerning fact or law, adjudicate the case solely upon the evidence presented at trial, and follow the instructions of the court.  Id. at 1036-37.  Here, although juror number 64 originally made comments that could be read as equivocating on the duty not to prejudice a defendant, upon further inquiry, the transcript adequately supports the determination of the state trial court that the juror could be fair.  In fact, the prosecution followed up and expressly asked the juror whether he could be fair, and the juror clearly responded in the affirmative.  Furthermore, the trial court—who was able to judge the demeanor of the juror and the credibility of his responses—was persuaded.  The trial judge's determination regarding juror number 64 is entitled to deference in this Court.  See Patton, 467 U.S. at 1038 (holding that a trial court is entitled to deference in ruling upon for-cause challenges); see also Harrington, 562 U.S. 86 (holding that a

state court's decision is entitled to deference even if the state court does not explicitly cite controlling Supreme Court precedent). Moore is not entitled to relief on this ground. See 28 U.S.C. § 2254(d).

### 3) Ground 3

In Moore's third ground, he claims the trial court erred by excluding prior inconsistent statements of the alleged victim concerning how the sexual intercourse occurred as "inadmissible hearsay." (ECF No. 10 at 12) Specifically, Moore contends the trial court erred by preventing him from introducing into evidence statements made by K.M. to Officer Henry as recorded in his police report. Moore tried to elicit this evidence from Detective Wooderson, who had learned of the statements from Officer Henry's police report.

According to Officer Henry's police report, K.M. represented that Moore forced her to sit on his lap in the driver's seat of his vehicle and forcibly inserted his penis into her vagina. (Resp. Ex. C at 16) At trial, however, K.M. testified that Moore climbed on top of her while she was in the passenger's seat, and forcibly penetrated her. (Resp. Ex. A at 361-62) Moore wanted to ask Detective Wooderson about these inconsistencies, but the State objected and the trial court excluded the statements in Officer Henry's reports as inadmissible hearsay.[8] (Id. at 613-16)

Moore appealed this ruling to the Missouri Court of Appeals. That court found that Moore had not made a sufficient offer of proof that Detective Wooderson had personal knowledge of the statements in Officer Henry's reports, and therefore ruled that there was no error in preventing Moore from examining Detective Wooderson about statements that K.M. made to Officer Henry. (Resp. Ex. E at 16-17)

---

[8] It is important to emphasize that Moore wanted to ask *Detective Wooderson* about the statements K.M. made to *Officer Henry*.

Moore makes two arguments for why this proposed line of questioning should have been permitted.  First he argues that the State prosecutor "opened the door" to statements made by the victim in this case, and that the prosecutor was permitted to introduce K.M.'s hearsay statements.  (ECF No. 21 at 12-13)  Second, Moore argues that by prohibiting him from introducing the victim's previous statements, the trial court infringed on "defendant's right to present a defense," with "arbitrary" rules that are "disproportionate to the purpose they are designed to serve."  (Id. at 13)  Moore contends that this made his entire trial fundamentally unfair.  (Id. at 14)[9]

Respondent argues that this Court should defer to the determination of the state courts concerning this issue of state evidentiary law.  (ECF No. 11 at 29-32)  Specifically, the State argues that this claim is not one of those few evidentiary issues (such as the Confrontation Clause) which falls within the purview of federal constitutional law, and that this ruling was not "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair."[10]  (Id. at 30)

This Court agrees that routine evidentiary issues are usually not cognizable in federal habeas proceedings.  Apart from exceptions such as the Confrontation Clause, an evidentiary issue only assumes constitutional significance where its introduction is "so extremely unfair that its admission violates fundamental conceptions of justice."  Dowling v. United States, 493 U.S.

---

[9] Moore also adds a somewhat vague allegation in his amended petition that the State also violated "Missouri Statute" by preventing Moore from introducing these hearsay statements from K.M.  (ECF No. 10 at 12)  The Court will not address alleged violations of Missouri statutes, because this Court only has jurisdiction to grant a writ of habeas corpus if the prisoner is in custody in violation of the federal constitution.  See 28 U.S.C. § 2254(a).

[10] The State also contends that Moore has procedurally defaulted this claim because it was reviewed for plain error review.  (ECF No. 11 at 16)  The State court itself did not declare, however, that Moore had procedurally defaulted the claim, and did not clearly state that it was engaging in plain error review.  In fact, the court of appeals said that it was reviewing this claim under the abuse of discretion standard.  (Resp. Ex. E at 16)  Therefore, in order to give Moore the broadest possible review of his claim, the undersigned will assume that this claim is not procedurally defaulted.

342, 352 (1990); see also Davis v. Campbell, 608 F.2d 317, 319 (8th Cir. 1979) ("The admissibility of evidence is usually a matter of state law and procedure and does not involve federal constitutional issues. A justiciable federal issue is presented in a habeas corpus proceeding only where trial errors infringe upon a specific constitutional protection or are so prejudicial as to amount to denial of due process.").

The trial court's ruling prohibiting hearsay upon hearsay was not a violation of state evidentiary law, let alone federal constitutional law. The court of appeals correctly noted that in a situation like this—where there was no evidence that Detective Wooderson had personal knowledge of the statements allegedly made by K.M. to Officer Henry, and where the defense did not call Officer Henry to testify—it was within the trial court's discretion to prohibit testimony concerning K.M.'s statements in the police report. This Court is bound by that interpretation of Missouri's evidence law. Green v. Norris, 12 F.3d 821, 823 (8th Cir. 1993). Therefore, Moore is not entitled to relief on this ground. See 28 U.S.C. § 2254(d)(1).

### 4)    **Ground 4**

Moore's fourth ground is a claim that the trial court erred in allowing non-expert witness Officer O'Neal to testify as to his conclusion that K.M.'s wounds were "fresh." Moore contends that this ruling invaded the fact-finding province of the jury. (ECF No. 10 at 12)

Officer O'Neal talked to K.M. in the early morning hours of March 24, 2008, taking a report and photographing her injuries. (Resp. Ex. A at 416-418) Officer O'Neal testified at trial concerning his impressions when he met with K.M. and photographed her injuries. (Id. at 418-23) As part of that testimony, Officer O'Neal testified that the injuries that he photographed appeared to him to be "fresh." (Id. at 421-23) Officer O'Neal stated this basic observation three different times. After the first time, Moore did not object; after the second time, Moore objected,

arguing that it was improper for Officer O'Neal to comment on whether the wounds were fresh because he was not an expert qualified to make a definitive determination in that regard.  (Id. at 421-22)  This objection was overruled.  Officer O'Neal then made the comment a third time, and there was no objection lodged.  (Id. at 423)

On direct appeal, Moore argued that the trial court erred in overruling his objection to Officer O'Neal's testimony.  (Resp. Ex. C at 16-17)  The Missouri court of appeals reviewed Moore's contention for plain error, holding that Moore had not preserved the appeal because he only objected the second time that Officer O'Neal testified that the wounds appeared fresh, not the first or third times.  (Resp. Ex. E at 18-19)

This ground is procedurally defaulted.[11]  As noted above, where the Missouri courts review a claim only for plain error, that claim is procedurally defaulted before the federal courts. See Bertsch, 780 F.3d at 877.  Here, the Missouri court of appeals only reviewed Moore's claims for plain error, and therefore, Moore must demonstrate cause and prejudice in order to have this Court determine the merits of his claim.  Coleman, 501 U.S. at 750.

Again, Moore makes only generalized arguments at the beginning of his traverse in attempting to demonstrate cause and prejudice.  (ECF No. 21 at 1-6)  Moore makes no particularized arguments as to what cause there was for procedurally defaulting this ground.  For the reasons stated earlier, generalized arguments about ineffective assistance of counsel are not sufficient to demonstrate cause for the procedural default, or particularized prejudice resulting from the alleged violation of the federal constitution.

_____

[11] Moore seems to argue that the State did not respond to this ground.  (ECF No. 21 at 14) ("It should be noted that the Respondent has refused to give a response to this Ground Four because he knows that the decisions of the State Court's was contrary to, or involved an unreasonable application of clearly established Federal law …")  In fact the State did respond to this ground.  (ECF No. 11 at 19-23)  It appears Moore may have overlooked this fact because the State's analysis of ground four was combined with its analysis of ground one.

Even if Moore had not defaulted this ground, he would not be entitled to relief because this ground involves a non-cognizable question of state evidentiary law. See Anderson, 44 F.3d at 679. The trial court's evidentiary ruling was not so egregious that it rendered Moore's whole trial fundamentally unfair. Here, the Missouri courts held that, where Officer O'Neal had personal knowledge of the wounds, and had personally seen them, and where it was impossible to recreate the scenario and facts of the wounds as they existed on March 23, 2008, it was permissible for Officer O'Neal to give his opinion. (Resp. Ex. E at 19-20) This is consistent with traditional federal and state evidentiary principles regarding opinion evidence. See, e.g., United States v. Smith, 591 F.3d 974, 983 (8th Cir. 2010) (permitting a testifying expert to offer a lay opinion based on personal knowledge and perception gained during a forensic interview with a victim); Shockley v. State, 147 S.W.3d 189, 194 (Mo. Ct. App. 2004) (holding that lay opinion evidence is admissible where the witness forms the opinion from facts personally observed, and where it is impossible or impracticable to place the facts before the jury in such a way that the jury may draw its own conclusions from the facts).

Moore also argues that the trial court should have sustained his objection to Officer O'Neal's characterization of the wounds as fresh because, in another context, the court sustained a defense objection to the prosecutor asking a non-expert witness whether it looked like the victim had been attacked within the last twenty four hours. (Resp. Ex. A at 459-60) These are distinguishable scenarios. Where the prosecutor asked if the wounds had been inflicted in the last twenty four hours, the prosecutor was asking for an opinion on a factual matter that was either true or not. Officer O'Neal's testimony was different—he was asked for his subjective impression, rather than a hard fact. It is reasonable—as the state courts found—to distinguish between these two types of questions from the prosecutor.

The undersigned has reviewed the record and concludes that there was no error, let alone error of sufficient egregiousness to implicate constitutional rights. Moore is not entitled to relief on this ground.

### 5) **Ground 5**

Moore's fifth ground is a claim that the trial court erred in refusing to instruct the jury on the defense of "consent" for the forcible rape and forcible sodomy counts, which Moore argues was supported by evidence he offered at trial.

At the close of all the evidence, the trial court held an instruction conference. (Resp. Ex. A at 646-653) Moore asked the trial court to give an instruction that required the jury to find a lack of consent on the part of the victim, in addition to the element of "forcible compulsion," in order to find the defendant guilty of forcible rape and forcible sodomy.[12]

The trial court rejected Moore's requested instruction, finding that the Missouri legislature amended the laws governing rape and forcible sodomy in 1994 so as to affirmatively remove the element of lack of consent from the definitions of those crimes. The Missouri Court of Appeals affirmed the trial court's analysis. (Resp. Ex. A at 652-53; Resp. Ex. E at 22-23) Furthermore, the court of appeals found that the element of consent is duplicative where the State must still prove "forcible compulsion." (Id. at 23-24) Therefore, the court of appeals held that the trial court was right to refuse Moore's proffered jury instructions and instead use the Missouri Approved Instructions.

---

[12]      As submitted by Moore, the jury instructions would have read described the elements of forcible rape has: (1) sexual intercourse; (2) without the consent of the victim, by the use of forcible compulsion; (3) knowingly. The elements of forcible sodomy would have been described as: (1) Moore placing his mouth on the victim's genitals; (2) so as to constitute deviate sexual intercourse; (3) without the victim's consent, and by the use of forcible compulsion; and (4) done knowingly. See (Resp. Ex. C at vii, viii)

Before this Court, Moore renews his contention that it violated his rights for the trial court to refuse to give the jury his instructions. The Court cannot reach the merits of this contention, however, because this ground is procedurally defaulted. Moore failed to raise this issue in accordance with Missouri appellate practice. Moore failed to comply with Missouri Supreme Court Rules 30.04(a) and 84.04(e), which required him to include proposed instructions in his appeal. (Resp. Ex. E at 21) Because Moore did not comply with those rules, the court of appeals reviewed Moore's claim solely for plain error. (Id. at 21-22) Therefore, this ground is defaulted. See Bertsch, 780 F.3d at 877. Moore must demonstrate cause and prejudice in order to have this Court excuse his default. Coleman, 501 U.S. at 750.

Again, Moore makes no specific or particularized arguments as to why there is cause for procedurally defaulting this ground. For the reasons stated earlier, generalized arguments about ineffective assistance of counsel are not sufficient to demonstrate cause or prejudice.

Even if this ground were not procedurally defaulted, Moore would not be entitled to relief because this ground involves a non-cognizable issue of state law, and the Court cannot grant relief on that basis. Wilson v. Corcoran, 562 U.S. 1, 5 (2010) ("[A] federal court may issue the writ to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States … federal habeas relief does not lie for errors of state law.").

In his traverse, Moore takes issue with the State's argument that this is a non-cognizable issue of state law. The undersigned agrees with Moore's general premise that an error in jury instructions, if egregious enough, can rise to the level of a due process violation. See Robinson v. LaFluer, 225 F.3d 950, 954 (8th Cir. 2000) ("Habeas corpus relief may be granted only when an erroneous jury instruction constituted a fundamental defect that resulted in a complete

miscarriage of justice, or an omission inconsistent with rudimentary demands of a fair trial.")
(quoting Louisell v. Director of Iowa Dept. of Corrections, 178 F.3d 1019, 1022 (8th Cir. 1999)).

Here, however, there is no egregious error— the jury was still instructed that it had to find "forcible compulsion" in order to convict Petitioner of forcible rape and forcible sodomy. If a jury finds that the accused forcibly compelled the victim to engage in sexual activity, it is inherent that the victim did not consent to that activity. The state court's finding in this respect is not an unreasonable application of due process law, and is not inconsistent with the rudimentary demands of a fair trial. Moore suffered no prejudice because the state necessarily proved what Moore wanted the state to prove by submitting his proposed instruction. (Resp. Ex. E at 23-24) Moore is not entitled to relief on this ground.

### 6) **Ineffective Assistance of Trial Counsel Claims**

#### a) **Ground 6**

Moore's sixth ground is a claim that he received ineffective assistance of trial counsel for failure to subpoena and produce as a witness officer Eric Henry. (ECF No. 10 at 13) Moore argues that his trial counsel should have subpoenaed Officer Henry in order to ask about inconsistencies between the victim's statements reflected in Officer Henry's police report and her testimony at trial. This ground is properly before this Court because Moore has fully exhausted his state court remedies pursuant to 28 U.S.C. § 2254(b)(1).

The factual background to this claim is the same as that for Ground 3, discussed above. According to the police report filed by Officer Henry, K.M.'s account to him about how Moore raped her differed from her trial testimony. The trial court would not allow Moore to question Detective Wooderson about statements recorded in Officer Henry's report.

Moore's contention is that his trial counsel was constitutionally ineffective for failing to call Officer Henry so that he could testify concerning K.M's statements in the police report. Moore argues that both his trial attorney and his PCR counsel were ineffective for failing to call Officer Henry. (ECF No. 21-1 at 64-6) Moore does not address the arguments adopted by the Missouri courts—that his attorney's decision not to call Officer Henry was sound trial strategy, because he would substantially bolster K.M.'s story in most respects; and that there was overwhelming evidence of Moore's guilt. Thus, even if Moore's attorneys should have produced Henry, there was no reasonable probability that the outcome of the trial would have been different.

The undersigned finds that the judgment of the Missouri courts was not contrary to federal law, nor an unreasonable application thereof. Therefore, Moore is not entitled to relief on this ground under 28 U.S.C. § 2254(d)(1). The Missouri courts cited the correct governing law—the <u>Strickland</u> standard. "To show ineffective assistance of counsel, a movant must demonstrate: (1) that counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) that counsel's deficient performance prejudiced the defense by showing a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (Resp. Ex. J at 2-3)

The Missouri courts also reasonably applied that law to the facts of this case.[13] The 29.15 motion court reasoned that if the contents of Officer Henry's police report had been allowed in, it would have bolstered K.M.'s testimony because the "interview conducted of the victim is virtually identical to her testimony at trial" except for Moore's positioning during the

---

[13] The Court notes that in determining whether a state court decision is unreasonable or contrary to established federal law, a habeas court looks to the state court's ultimate conclusion, not merely the reasons given to explain that conclusion. See <u>Williams v. Roper</u>, 695 F.3d 825, 831-32 (8th Cir. 2012).

rape and the failure to mention oral sex.  (Resp. Ex. G at 60)  That court noted that "every other

detail would have corroborated the victim's testimony, including the fact that she was shoved in

the trunk of Movant's car, escaped from the trunk, was chased down a ravine, forced to take off

her clothes and get back in the car and choked multiple times.  Even the detail that Movant

stopped at a White Castle restaurant to purchase a soda for the victim, is virtually identical to her

testimony at trial."  (Id. at 61)  The court found that Officer Henry would do more to bolster the

victim's testimony than impeach it.  (Id.)  Therefore, the Missouri courts held that Moore's

counsel was not ineffective, and that Moore did not suffer any prejudice.  This is a reasonable

interpretation of federal constitutional law.  Moore is not entitled to relief on this ground.  See 28

U.S.C. § 2254(d)(1).[14]

### b)  Ground 7

Moore's seventh ground is a claim that he received ineffective assistance of trial counsel

because trial counsel failed to object to evidence of Moore's prior domestic assault of K.M.

(ECF No. 10 at 13-14)  This ground is properly before this Court because Moore has exhausted

his state court remedies pursuant to 28 U.S.C. § 2254(b)(1).

As background, on March 2, 2008, a few weeks before the rape at issue in this matter,

Moore and K.M. were involved in a serious episode of domestic violence.  K.M. testified at trial

that Moore punched her several times, and K.M. fled the house with her daughter in order to call

the police.  Moore argues that evidence of this prior episode of violence was impermissibly

---

[14]     The Missouri courts also held that Moore was not entitled to relief on this ground because
Officer Henry was not called to testify at the evidentiary hearing—therefore it was not clear what
he would have testified to at trial.  The courts held that where there was no evidence of what
Officer Henry would have testified to at trial, Moore had not met his burden to prove that trial
counsel was ineffective; nor could Moore demonstrate prejudice for failure to call Henry where it
was unclear to what Henry would testify.  (Resp. Ex. J at 3-4)  Thus, both substantively and
procedurally, Petitioner's claim does not stand.

allowed into evidence. Moore argues that this evidence was impermissible evidence of prior bad

acts which tended to show him in a bad light as a violent person. Moore argues that, had his

attorney objected to the introduction of this evidence, the objection would have been sustained,

and the outcome of the trial would have been different. (ECF No. 21-1 at 7-11)

The Missouri courts disagreed. The 29.15 court held that Moore was not entitled to relief

on this ground because it was a reasonable trial strategy to allow this previous evidence of bad

acts in. At the evidentiary hearing, Moore's trial counsel testified that she did not object because

the evidence of the previous domestic assault gave K.M. a motive to lie about the events of

March 23, 2008. Additionally, Moore's trial counsel thought that it was helpful to allow this

evidence in because it helped to explain the bruising on K.M.'s body and throat, and explained

her injuries. Counsel pointed out that the defense in this case was that Moore and K.M. engaged

in consensual sexual activity. It would have been harder to argue that the activity was

consensual without a credible explanation for the bruises and injuries found on K.M. after the

March 23, 2008 incident. The 29.15 court agreed that this was a reasonable trial strategy, and

therefore, Moore's trial counsel was not ineffective. (Resp. Ex. G at 61-63)

The Missouri Court of Appeals affirmed, noting that, in light of the "overwhelming

evidence" of Moore's guilt, "it is difficult to envision more effective strategies." The

"overwhelming evidence" included K.M.'s injuries, the medical evidence (including the rape

kit), a recovered glove matching the victim's description of those worn by the Petitioner during

the attack, and her testimony, along with incriminating and inconsistent statements from Moore.

(Resp. Ex. J at 6-7). Given that determination, the court of appeals held that Moore's attorney

was not ineffective merely because trial counsel's strategy ultimately proved unsuccessful. (Id.

at 7-8)

The Missouri courts correctly and reasonably applied federal law. Moore's trial counsel made a reasonable judgment that evidence of the prior domestic assault would account for the injuries to K.M., therefore supporting the idea that the March 23rd encounter was consensual. Furthermore, the evidence of the prior domestic assault provided an arguable motive for K.M. to lie about the consensual nature of the March 23rd incident. The fact that this gamble was not ultimately successful does not make trial counsel's strategy unconstitutional. See Strickland, 466 U.S. at 689-90 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). Moore is not entitled to relief on this ground. See 28 U.S.C. § 2254(d)(1).

### c) **Ground 8**

Moore's eighth ground is a claim that he received ineffective assistance of trial counsel when his trial attorney failed to impeach Officer Shipley for inconsistencies in how Officer Shipley described his arrest of Moore. In his police report, Officer Shipley claimed Moore was arrested without incident. At trial, Officer Shipley claimed Moore was attempting to flee when he arrested Moore. (ECF No. 10 at 14-15) Moore has properly preserved this ground.

As further background, when Moore was arrested on March 25, 2008, he was at a girlfriend's house. Officer Shipley responded to the house, and was granted permission to enter by the girlfriend. Officer Shipley found Moore in the back room, and noticed that one of the windows was open, with the screen pushed out. According to the officer, it appeared as though Moore was preparing to flee through the window. When Shipley encountered Moore, Moore asked Shipley "how the f*** did you find me?" (Resp. Ex. A at 44-46) At trial, Officer Shipley testified to these details. In his report after the arrest, however, Officer Shipley merely stated in

a one paragraph entry that Moore was arrested "without incident."  Moore argues that the additional details that Shipley testified to were prejudicial to him, because they implied an acknowledgment of guilt on Moore's part; and Moore argues that his trial attorney should have impeached this testimony of Officer Shipley.  Moore contends that had his trial attorney properly impeached Officer Shipley, the result of the trial would have been different.

The Missouri courts adequately addressed this issue in Moore's post-conviction proceedings, denying Moore's claims.  (Resp. Ex. G at 63-64; and Resp. Ex. J at 8-9)  This was neither contrary to, nor an unreasonable application of, federal law.  Therefore, Moore is not entitled to relief on this ground.

This ground is also governed by the <u>Strickland</u> standard.  (Resp. Ex. J at 2-3)  The Missouri courts reasonably applied that law to the facts of this case.  The court of appeals held that failure to impeach a witness generally does not warrant relief for ineffective assistance of counsel, as this is generally a matter of trial strategy.  (<u>Id.</u> at 3)  The motion court felt that Officer Shipley would have had a ready explanation for this inconsistency:  Officer Shipley was simply the arresting officer that day because Moore happened to be in that jurisdiction, and therefore a detailed written account of the encounter was seemingly unnecessary.  (Resp. Ex. G at 63-64)  Because of this ready explanation, the court did not think it unreasonable for trial counsel to fail to pursue this ground.  Additionally, the 29.15 court pointed out that the theory of the defense was one of consent, and trial counsel reasonably determined that minor and explainable disputes concerning Officer's Shipley's accounts of the arrest were not relevant to the main concerns in the case.  This is a reasonable application of the <u>Strickland</u> standard.

The Missouri court of appeals took a slightly different tack, instead finding that regardless of whether trial counsel should have discussed Officer Shipley's purported

inconsistencies, there was no prejudice to Moore.  (Resp. Ex. J at 8-9)  The court held that

"impeaching Officer Shipley would not have changed the outcome of the trial because the

evidence of the movant's guilt … was overwhelming."  (Id. at 8)  This undersigned agrees.

Whether or not Moore's trial counsel should have impeached Shipley, the outcome of the trial

would not have changed.  The conclusions of the Missouri courts to that effect are reasonable

applications of the Strickland prejudice prong.  Moore is not entitled to relief.

### d)  Ground 9

Moore's ninth ground is a claim that he received ineffective assistance of trial counsel for

trial counsel's failure to challenge the legality of Moore's March 25, 2008, arrest at his

girlfriend's house, and failure to move to suppress the resulting statements and physical

evidence.  Moore argues that the police illegally entered the apartment without an arrest warrant

or consent, and that all evidence derived from that search should have been suppressed.

This ground is procedurally defaulted.  Moore initially raised this claim with the 29.15

motion court, but when that court denied relief, Moore failed to include it in his appeal.  Because

Moore failed to include this ground on post-conviction appeal, he has procedurally defaulted the

claim.  See Lowe-Bey v. Groose, 28 F.3d 816, 818 (8th Cir. 1994) ("The failure to raise the

ineffective assistance claims in an appeal from the denial of Rule 29.15 relief raises a procedural

bar to pursuing those claims in federal court.").

In addition to his generally applicable arguments against procedural default which were

discussed above, in this case, Moore relies on Martinez to cure his default.  (Id. at 2)  As outlined

above, under Martinez, PCR counsel's ineffectiveness can constitute cause for a procedural

default where:  (1) the claim of ineffective assistance of trial counsel is a "substantial" claim; (2)

the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state

collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding." Trevino, 133 S. Ct. at 1918. A "substantial" claim is one that has "some merit." Martinez, 566 U.S. at 14.

Moore is not entitled to review of this defaulted ground, however, because ineffective assistance of PCR counsel on appeal. See Arnold v. Dormire, 675 F.3d 1082, 1087-88 (8th Cir. 2012) (holding, even after Martinez, that an alleged error by post-conviction appellate counsel did not constitute cause to excuse procedural default on other ineffective assistance claims). It was Moore's appellate PCR counsel who failed to appeal the denial by the 29.15 court, and therefore Martinez does not apply. Petitioner had his "day in court" on this ground and it was not preserved on the subsequent proceeding.

Even if the Court could review the merits, this claim would be unavailing, because the Missouri 29.15 court rejected this ground, and in doing so, it correctly cited federal law and reasonably applied that law to the facts of this case in accordance with § 2254(d)(1). (Resp. Ex. G at 64-65)

The 29.15 court held that Moore's trial counsel was not ineffective for failing to file a motion challenging Moore's arrest and attempting to suppress the evidence resulting from that arrest, as such a motion would clearly have failed. The court noted that Moore was found at a girlfriend's apartment, and nothing indicates Moore could have established Fourth Amendment standing to contest the entry of the police into the apartment. Additionally, the court held that even if Moore could establish standing to contest the entrance, the claim would clearly fail because the evidence shows that the police entered with the consent of the woman who answered

the door.  Although the 29.15 court did not cite directly to the controlling authority for consent

searches, it is clear that the Court's disposition is in line with Supreme Court precedent

permitting police to search where they receive consent from a person who had apparent authority

to permit the search.  See Illinois v. Rodriguez, 497 U.S. 177, 186 (1990) (holding that

warrantless entry into a home is valid when based upon consent of third party whom police, at

time of entry, reasonably believe to possess common authority over premises).

Here, the woman answering the door had apparent authority to consent to a search—the

woman answered the door and appeared to be the person living there; and a neighbor to whom

the police had given a description of the woman pointed to that unit as her home.  "Where a third

party appears to have authority over the entire premises, the police may rely on that person's

consent to search throughout the house, so long as the consent appeared to extend so far." United

States v. Almeida-Perez, 549 F.3d 1162, 1172 (8th Cir. 2008); see also United States v.

Rodriguez, 934 F.3d 937, 940 (8th Cir. 2016) (holding that consent may be inferred based on

words, gestures or other conduct).

Here, the police knocked on the door, announced who they were and that they were

looking for Moore.  Knowing what the police wanted as a result of that announcement, the

woman stepped aside and pointed to the interior of the apartment where Moore was.  The typical,

reasonable person would understand these actions to be consent to enter and search the premises.

The 29.15 motion court reasonably found that a motion challenging the legality of the arrest

would have failed.  The 29.15 court's conclusion— that failure to file such a motion is not

deficient representation— was a reasonable application of federal law.  Therefore, even if this

Court could excuse Moore's procedural default and review the merits of his claim, Moore would

still not be entitled to relief on this ground under § 2254(d)(1).

## e)  <u>Ground 10</u>

Moore's tenth ground is a claim that he received ineffective assistance of trial counsel for trial counsel's failure to object to the absence of any African-Americans on the venire panel. Moore argues that—according to census data—there should have been two African-Americans on the venire panel out of a total of fifty. Because there were no African-Americans on the venire panel actually assembled, Petitioner argues that there was a systemic practice excluding African-Americans from St. Charles County venire pools.

Moore raised this issue in the 29.15 court, but that court denied relief. Moore did not appeal that determination. This claim is procedurally defaulted. See Lowe-Bey, *supra*. The same procedural default analysis that the Court conducted with regard to ground nine applies here as well: Moore makes no specific accusations of ineffective behavior on behalf of his post-conviction counsel. This Court cannot excuse Moore's procedural default.

Further, Moore has not complied with the pleading requirements for habeas claims on this ground. Moore pleads no facts in support of his argument (See ECF No. 10 at 16), which is enough to merit dismissal of this ground. See Blackledge v. Allisson, 431 U.S. 63, 76 n. 7 (1976) (holding that a petition that contains merely "notice" pleading is insufficient for purposes of habeas corpus relief).

Even if it were permissible for this Court to proceed to the merits of this ground, Moore would not be entitled to relief because the Missouri courts correctly and reasonably adjudicated this claim under § 2254(d)(1).[15] First, as noted in previous grounds, the controlling law is the Strickland standard. Therefore, it must have been objectively unreasonable under the prevailing

---

[15] In disposing of this issue, the state courts did not give an exhaustive analysis of the reasons for rejecting this claim. Nevertheless, this determination is still entitled to AEDPA deference. See Harrington v. Richter, 562 U.S. 86, 98 (2011).

professional norms to fail to file this potential motion; and the failure to file the motion must have been prejudicial in that there is a reasonable probability that the outcome of the case would have been different but for the constitutional ineffectiveness of counsel.

In order to determine whether that standard was met, the Court must evaluate the underlying law that regarding venire panel makeup and its applicability to this case. The standards governing this inquiry are laid out in Duren v. Missouri, 439 U.S. 357 (1979). To establish a prima facie violation of the Sixth Amendment by excluding a group from jury pools, a defendant must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Id. at 364.

Here, there is no doubt that African-Americans constitute a "distinctive group" for fair cross-section purposes, see Peters v. Kiff, 407 U.S. 493, 498 (1972), and the undersigned will assume that Moore has satisfied the second requirement of the Duren test because no African-Americans were on the venire. Moore's argument falters, however, at step three of the Duren test. Moore presents no evidence to support his claim that the underrepresentation is due to systemic exclusion as opposed to mere chance. It is his burden to demonstrate the state action required for a prima facie case, and he does not even begin to take up the burden.[16] Because it is

---

[16] Moore argues that "the State and the State Courts in this present case, never once denied the fact that African-Americans were systematically excluded from jury service in this case." (ECF No. 21-2 at 4) First of all, this is factually incorrect, as the 29.15 court affirmatively stated that it was familiar with the venire selection processes in St. Charles County courts, and was "satisfied that no discriminatory practices were employed." (Resp. Ex. G at 65). Second, this argument states the burden of proof backwards: the burden rests upon Moore to prove the systemic exclusion, not upon the State to show that opposite.

clear that Moore's underlying fair cross-section claim is factually unsupported, his attorney's failure to raise that point was not unreasonable and Moore can show no prejudice from the failure to raise this claim. The Missouri courts' disposition of this issue was correct and reasonable under federal law. Moore is not entitled to relief on this ground.

### f)  <u>Ground 11</u>

Moore's eleventh ground is a claim that he received ineffective assistance of trial counsel for failure to seek a speedy trial despite Moore's request for a speedy trial. Moore alleges that his trial counsel was ineffective both for failing to move for a speedy trial while Moore was incarcerated pretrial, and that counsel was ineffective for failing to move to dismiss the charges because of the lengthy delay in bringing the case to trial. (ECF No. 21-2 at 8)

Moore raised this issue in the 29.15 court, but that court denied relief. Moore did not appeal that finding of the 29.15 court. Thus, it is procedurally defaulted. <u>See</u> <u>Lowe-Bey</u>, *supra*. Even if Moore argues that his procedural default should be excused under <u>Martinez</u>, the same analysis that the Court conducted with regard to ground nine applies here as well. Therefore, this ground is procedurally defaulted.

Even if this Court could reach the merits of Moore's claim, Moore's contentions would be unavailing. The decision of the 29.15 court was not contrary to, nor an unreasonable application of, federal law relating to speedy trial rights. The undersigned notes that the 29.15 court's analysis of this issue was somewhat cursory, and simply held that Moore did not allege prejudice from any purported failure of his attorney to enforce Moore's speedy trial rights. (Resp. Ex. G at 65)  As discussed above, however, in determining whether a state court decision is unreasonable or contrary to established federal law, this Court must look to the ultimate conclusion of the state court, as opposed to the reasoning of the state court. <u>See</u> <u>Harrington</u>, 562

U.S. at 98.  The 29.15 court's decision was not contrary to, nor an unreasonable application of, either the <u>Strickland</u> standard, or the underlying speedy trial rights established in <u>Barker v. Wingo</u>, 407 U.S. 514 (1970).

The Sixth Amendment provides that an accused shall have the right to a speedy and public trial.  This right attaches from the time of arrest or formal charge, whichever comes first. <u>United States v. Marion</u>, 404 U.S. 307, 313 (1971) ("[T]he Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused'…").  In considering whether a defendant's speedy trial rights have been violated, this Court must consider:  (1) the length of the delay; (2) the reasons for the delay; (3) if and when a defendant first requested a speedy trial; and (4) the prejudice to the defendant from the delay. <u>Barker</u>, 407 U.S. at 530-32.

The first factor appears to favor Moore, because Supreme Court precedent holds that delay in excess of one year is presumptively prejudicial.  <u>United States v. Doggett</u>, 505 U.S. 647, 652, n. 1 (1992).  Moore was arrested in March of 2008, and his trial began in April of 2010— more than two years later.  (Resp. Ex. B at 2, 10)  This factor, however, is just a "triggering mechanism," a minimal showing required before the Court will even inquire further into a defendant's speedy trial claims.  <u>Id.</u> at 530.

The second factor concerns the reason for the delay.  Deliberate attempts to hamper the defense will weigh heavily against the government.  <u>Barker</u>, 407 U.S. at 531.  On the other hand, delays resulting from valid reasons such as the defendant's actions, or a defendant's request for delays do not weigh against the government at all.  <u>Vermont v. Brillon</u>, 556 U.S. 81, 92-93 (2009) (holding that a three year delay attributable to the defendant firing his attorney on the eve

of trial and threatening another attorney did not weigh against the government). This factor weighs heavily against Moore because there were several legitimate reasons for the delay.

First, although the State filed charges in March of 2008, in the months thereafter, both parties requested changes of judges; and the defendant filed motions to dismiss counts four and five. The new judge finally arraigned Moore on these charges on May 15, 2009, and trial was set for September 28, 2009. A month before trial, Moore filed a motion to compel discovery. The trial court granted that motion, ordered the discovery, and reset the trial for February 2, 2010. Shortly before that trial date, Moore requested a continuance in order to obtain additional discovery. The next trial date was set for March 29, 2010, but ended when Moore requested and received a mistrial. The second trial started on April 13, 2010. It appears, therefore, that most of the two-year delay was attributable to legitimate motions, mostly filed by Moore. The State did not try to hamper Moore, but instead accommodated his requests and the court granted several motions that Moore considered important to his defense.

The third factor also weighs against Moore, because there is no evidence in the record that Moore affirmatively invoked his right to a speedy trial. (Resp. Ex. B at 3-9) Moore concedes that he did not file a motion asserting his rights to a speedy trial, but claims that this is only because his attorney flatly refused to file such a motion. (ECF No. 21-2 at 10-11) The Court notes that there are no facts in the record to support Moore's contention that he wanted to file a motion asserting his speedy trial rights, but was prevented from doing so by his attorney. Because Moore has not met his burden of proof to show that he attempted to assert his speedy trial rights, this factor weighs heavily against him.

The final factor that courts consider in evaluating speedy trial claims is prejudice to the defendant from pretrial delay. Barker, 407 U.S. at 532. Here, as noted by the 29.15 motion

court, Moore makes no allegations of legal prejudice due to the pretrial delay.  In fact, the only

prejudice that Moore even alleges is the fact of his incarceration pretrial.  (ECF No. 21-2 at 8-11)

Moore makes no allegations that his ability to defend himself against the charges pending was

impaired.  Therefore, the motion court's decision that Moore had not alleged any legally relevant

prejudice due to the pretrial delay is not contrary to—nor an unreasonable application of—

federal law.  See United States v. Jenkins-Watts, 574 F.3d 950, 967 (8th Cir. 2009) (holding that

a defendant had not established prejudice where he failed to show impairment of defense).

Because there was no violation of Moore's underlying Sixth Amendment right, Moore's trial

attorney was not ineffective for failing to raise the issue; and in any event, Moore suffered no

prejudice.  See Strickland, 466 U.S. at 694.  Moore is not entitled to relief on this ground.

### g) **Ground 12**

Moore's twelfth ground is a claim that he received ineffective assistance of trial counsel

for trial counsel's failure to insist on a hearing, outside the presence of the jury, on the

admissibility of evidence of consensual sexual activity otherwise deemed inadmissible by the

Missouri Rape Shield Statute.  (ECF No. 10 at 16)  In his traverse, however, it appears that

Moore is abandoning this claim.  (ECF No. 21-2 at 12)  Moore now admits that there was in fact

such a hearing.  In any event, the evidence of prior sexual activity that Moore wanted to admit

was in fact brought up by the prosecution in their case-in-chief.  Moore is not entitled to relief.[17]

### h) **Ground 13**

Moore's thirteenth ground is a claim that he received ineffective assistance of trial

counsel due to trial counsel's failure to retain an expert on forensic pathology to testify and prove

that sperm collected in the rape kit was deposited on the victim more than 48 hours prior to the

---

[17] Even if Moore did not intend to abandon this ground, it is procedurally defaulted
because Moore failed to raise this claim on post-conviction appeal.  See Lowe-Bey, *supra*.

alleged rape and sodomy. (ECF No. 10 at 17) Similarly to ground twelve, however, it appears that Moore has abandoned this claim. (ECF No. 21-2 at 12-13) Moore's original claim was that his counsel should have called an expert to show that the sperm collected in the rape kit could have come from someone else. In his traverse, however, Moore acknowledges that he admitted having sex with K.M. (Id. at 13) Moore acknowledges that it would have been contrary to his defense of consent to argue the sperm came from someone else. (Id.) Even if Moore did not intend to abandon this ground, it is procedurally defaulted because Moore failed to raise this claim on post-conviction appeal. See Lowe-Bey, supra. Therefore, the ground should be denied.

### i) **Ground 14**

Moore's fourteenth ground is a claim that he received ineffective assistance of trial counsel because of his trial counsel's failure to object to a discovery violation by the State for failure to produce incriminating evidence known by Officer Shipley, but not contained in his police report. This ground is related to ground eight, above. As noted above, Officer Shipley—who arrested Moore at his girlfriend's house—testified that when he encountered Moore, it looked as though Moore was about to flee. One of the windows in the bedroom was open, with the screen pushed out. When Officer Shipley encountered Moore, Moore asked "how the f*** did you find me?" (Resp. Ex. A at 44-46) However, in his police report, Officer Shipley only reported that Moore was arrested "without incident." Moore contends that the additional details, including the statement about how Officer Shipley found Moore, are inculpatory towards Moore, and should have been turned over under Brady v. Maryland, 373 U.S. 83 (1963). Moore argues that the State's failure to turn this evidence over constitutes a "discovery violation," and his trial counsel was ineffective for failing to object to this "violation." (ECF No. 21-2 at 13)

This ground is procedurally defaulted because Moore failed to raise this claim on post-conviction appeal. See Lowe-Bey, *supra*. Even if Moore argues that his procedural default should be excused under Martinez, the same analysis that the Court conducted with regard to ground nine applies here as well: Moore makes no specific accusations of ineffective behavior on behalf of his post-conviction counsel, and in any event, Martinez cannot save this type of procedural default.

If this Court could reach the merits of Moore's claim, Moore's contentions would be unavailing. The 29.15 court's decision was not contrary to, nor an unreasonable application of, federal due process law. As an initial matter, Moore's claim fails because he alleges that the failure to turn over *inculpatory* statements was a violation of Brady. (ECF No. 211-2 at 13.) But Brady only requires the prosecutor to turn over *exculpatory* evidence prior to trial. See United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996) ("Brady does not require the government to disclose inculpatory evidence.").

Second, the record demonstrates that the statements that Moore contends are inculpatory were, in fact, turned over before trial in a letter to defense counsel. (Resp. Ex A at 85) Therefore, even if this Court were to construe the statements at issue as exculpatory insofar as they can be used as impeachment evidence as applied to Officer Shipley, the record demonstrates that the evidence was turned over before trial, as Brady requires. The statements were discussed at a pretrial hearing concerning Moore's motion to suppress statements. (Resp. Ex. A at 85) The trial in this matter was more than three weeks later. The Brady rule was satisfied in this case.

The decision of the 29.15 court is a correct and reasonable one, and Moore is not entitled to relief on this ground.[18]

### j) <u>Ground 15</u>

Moore's fifteenth ground alleges that he received ineffective assistance of direct appeal counsel due to counsel's failure to appeal that the trial court's refusal to allow trial counsel to cross-examine Detective Wooderson with the victim's statements to Officer Henry.

As discussed above in relation to ground three, the trial court precluded Moore from asking Detective Wooderson about statements attributed to K.M. in Officer Henry's police report. These statements were allegedly inconsistent with testimony that K.M. gave at trial concerning the position that Moore was in relative to K.M. when he raped her. In this ground, Moore alleges that his direct appeal counsel was constitutionally ineffective for failing to argue on direct appeal that the trial court's ruling in this regard was erroneous. (ECF No. 10 at 17-18; ECF No. 21-2 at 14-15)

This ground is procedurally defaulted because it was not included in Moore's motion for relief before the 29.15 court. <u>See</u> <u>Dansby</u>, 766 F.3d at 823. In response, Moore once more makes generalized arguments that his attorneys were ineffective, and that that ineffectiveness serves as cause to excuse his procedural default. (ECF No. 21 at 2-3) Moore also cites <u>Martinez</u>. <u>Martinez</u> does not apply in this situation. <u>Martinez</u> applies to instances where ineffective post-conviction counsel has caused a petitioner to procedurally default an ineffective assistance of *trial counsel* claim, not an ineffective assistance of *appellate counsel* claim. <u>See</u> <u>Dansby</u>, 766 F.3d at 833 (declining to extend <u>Martinez</u> to claims alleging ineffective assistance

---

[18] To the extent that Moore is not arguing a violation of <u>Brady</u>, but instead arguing that the State violated Rule 25.03 of the Missouri Rules of Criminal Procedure, that is a non-cognizable issue because it is not a federal constitutional issue. <u>See</u> 28 U.S.C. § 2254(a).

of counsel on direct appeal). Because Moore has not alleged any particularized facts showing that his appellate counsel was ineffective, and <u>Martinez</u> does not extend to ineffective assistance of appellate counsel claims, this Court will not excuse Moore's procedural default of this claim.

Even if this Court could excuse Moore's procedural default of this ground and consider the merits, the Court would find Moore's arguments unavailing on the merits. For the same reasons discussed in relation to ground three, above, the trial court did not err in prohibiting Moore from questioning Detective Wooderson about the statements in Officer Henry's police report. Moore's appellate counsel was not ineffective for failing to make an argument that was unlikely to succeed, and Moore suffered no prejudice because the failure to include this argument did not affect the outcome of the case. Moore is not entitled to relief on this ground.[19]

### k) <u>Ground 16</u>

Moore's sixteenth ground is a claim that he received ineffective assistance of post-conviction counsel for failing to raise multiple issues in the 29.15 court, including: (i) trial counsel was ineffective for failing to file a motion to suppress physical evidence; (ii) trial counsel was ineffective for failing to challenge the fact that Moore's arrest was made without a warrant; (iii) trial counsel was ineffective for failing to interview and call Moore's witnesses, who were willing to testify at trial; (iv) trial counsel was ineffective for failing to inform Moore of all possible defenses that could be presented, including an <u>Alford</u> plea and/or insanity defense; (v) trial counsel was ineffective for failing to subpoena all laboratory reports from St. Louis City police; (vi) trial counsel was ineffective for failing to file a motion proposing evidence under § 491.015; (vii) trial counsel was ineffective for failing to object to the prosecution's "surprised evidence;" (viii) trial counsel was ineffective for failing to object to the prosecutor eliciting

---

[19] Additionally, this is an issue of state evidentiary law that is, as described above, generally not cognizable before this Court. <u>See</u> <u>Anderson</u>, 44 F.3d at 679

irrelevant evidence; (ix) trial counsel was ineffective for failing to object to the State's motion in limine preventing Moore from referencing the victim's prior sexual history; (x) trial counsel was ineffective for failing to correctly or truthfully inform Moore on matters regarding whether he could ask the State for assistance with a defense expert witness; and (xi) trial counsel was ineffective for failing to seek to have Counts 4 and 5 of the indictment dismissed on the grounds that the trial court did not have jurisdiction over these counts occurring in the City of St. Louis, or in the alternative, failing to transfer Counts 4 and 5 to St. Louis City, which is the proper venue to address these counts.

The undersigned simply notes that ground 16 as a whole, and all of Moore's sub-claims within ground 16 are not cognizable in this Court. Ineffective assistance of post-conviction counsel cannot be a ground for relief under AEDPA. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). The undersigned notes, however, that in order to give Moore the broadest possible review of his claims, the undersigned has considered the allegations of ineffective assistance of post-conviction counsel under Martinez in considering whether Moore has demonstrated cause for procedural default of any claim.

## V.     Certificate of Appealability

The undersigned has also considered whether to recommend that the district court issue a certificate of appealability. To grant a certificate of appealability, the Court must find a substantial showing of the denial of a federal constitutional right. See Tiedman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a Court could resolve the issues differently, or the issues deserve

further proceedings.  Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)).  As discussed in the analysis above, Moore has not made a substantial showing of the denial of a federal constitutional right.  Because Moore has not made such a showing in this case, the undersigned will not recommend that the Court issue a certificate of appealability.

**VI.**     **Conclusion**

For all of the foregoing reasons, the undersigned recommends that Moore's writ of habeas corpus be denied with prejudice, and that no certificate of appealability issue.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner Jeffrey Scott Moore amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1 and 10) be denied.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be granted, because Moore has not made a substantial showing of the denial of a federal constitutional right.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of May, 2017